IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 26, 2008 Session

## DANE LEE DUCKETT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Cumberland County**
**No. 7479    David Patterson, Judge**

_____

**No. E2007-02128-CCA-R3-PC - Filed July 1, 2008**

_____

Petitioner, Dane Lee Duckett, was convicted by a Cumberland County Jury of attempt to manufacture methamphetamine, possession of marijuana, driving on a revoked license, and possession of drug paraphernalia. As a result, he was sentenced to an effective sentence of six years. His convictions and sentence were affirmed on direct appeal. *See State v. Dane Lee Duckett*, No. E2004-02321-CCA-R3-CD, 2005 WL 2777378, at *7 (Tenn. Crim. App., at Knoxville, Oct. 26, 2005). In this appeal from the denial of post-conviction relief, Petitioner asserts that the trial court improperly dismissed his petition because he received ineffective assistance of counsel at trial. We determine that Petitioner did not receive ineffective assistance of counsel and, therefore, affirm the judgments of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

F. Chris Cawood, Kingston, Tennessee, for the appellant, Dane Lee Duckett.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Bill Gibson, District Attorney General; and Mark E. Gore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In July of 2003, the Cumberland County Grand Jury indicted Petitioner with driving on a revoked license, possession of marijuana, attempt to manufacture methamphetamine, and possession of drug paraphernalia. After a jury trial, Petitioner was convicted of all offenses as charged in the indictment. The trial court sentenced Petitioner to an effective sentence of six years. Petitioner

appealed both his convictions and sentence to this Court. On appeal, this Court summarized the facts of the case as follows:

Deputy Richard Tinch of the Cumberland County Sheriff's Department testified that on February 28, 2003, he was on patrol and pulled into the Lantana Market in order to buy a soft drink. As he pulled into the parking lot, Deputy Tinch noticed a blue Oldsmobile parked at a gas pump and saw the appellant getting out of the driver's seat. The appellant shut the car door and began pumping gas, and Deputy Tinch went into the store. As Deputy Tinch came out, the appellant passed him. Deputy Tinch recognized the appellant and believed that the appellant's driver's license had been suspended. While the appellant was in the store, Deputy Tinch ran a computer check on the Oldsmobile's license plate and learned that the plate was not registered to the car. When the appellant came out of the store, Deputy Tinch confronted him about the car and his driver's license. The appellant told the deputy that his license had been suspended but that he recently had sent money to the State of Tennessee in order to have the license reinstated. Deputy Tinch ran a computer check on the appellant's license, learned that it had been suspended, and arrested the appellant for driving on a suspended license. Deputy Tinch learned that the license tag on the car was registered to Frances Morrison, the appellant's mother.

Deputy Tinch approached the Oldsmobile and saw Mark Hamby sitting in the front passenger seat and Tiffany Marshall sitting in the back seat. A black leather jacket was in the driver's seat. Deputy Tinch searched the jacket pockets and found a syringe and a partially-smoked marijuana cigarette. Deputy Tinch searched the car and found a jar containing a white liquid underneath the passenger seat. The liquid was field-tested, and it tested positive for ephedrine. Deputy Tinch said that the keys were in the car's ignition and that a roach clip and a brass-colored spoon with some residue on it were attached to the keychain. Deputy Tinch called for a supervisor, and Lieutenant Gary Cox came to the scene. Lieutenant Cox then called Lieutenant David Gibson to the Lantana Market. When Lieutenant Gibson arrived, the officers opened the car's trunk and found boxes of matchbooks, iodine, packets of pseudoephedrine, a large bottle of lighter fluid, plastic tubing, carburetor cleaner, coffee filters, leather work gloves stained dark red, and a Pyrex baking dish. The officers also found a second jar containing a liquid.

On cross-examination, Deputy Tinch testified that he never saw the appellant driving the Oldsmobile, that there was no indication the jacket belonged to the appellant, and that he found no drug paraphernalia on the appellant's person. He stated that he did not remember the appellant's telling him that the appellant was not driving the car and that it was possible Hamby or Marshall had been driving. He stated that the police did not dust the car or the items found in it for fingerprints and that he charged everyone in the car with attempting to manufacture methamphetamine.

-2-

Lieutenant David Gibson of the Cumberland County Sheriff's Department testified that he was trained in detecting and dealing with methamphetamine laboratories and was certified to handle methamphetamine labs. On February 28, 2003, he was dispatched to the Lantana Market. He stated that only someone certified in methamphetamine laboratories could handle the items found in the car trunk because the materials used to manufacture methamphetamine could cause an explosion. He stated that the most common method used to make methamphetamine in that area of Tennessee was the red phosphorus method, which required ephedrine, iodine, and phosphorus. He stated that the ephedrine could be obtained from Sudafed tablets and that the phosphorus could be obtained by taking the striker plates off matchbook covers and soaking them in acetone. He stated that people often wore gloves to make methamphetamine and that iodine would stain the gloves reddish-brown. He said that he field-tested the liquid found in the car's trunk and that it tested positive for methamphetamine oil. Lieutenant Gibson transported the items found in the Oldsmobile to the Tennessee Bureau of Investigation's (TBI) Crime Laboratory. On cross-examination, Lieutenant Gibson testified that the striker plates found in the Oldsmobile had not been removed from the matchbook covers, that he did not find any acetone or hydrogen peroxide in the car, and that he never saw the appellant driving the Oldsmobile.

Robert Mark Young, a forensic scientist with the TBI Crime Laboratory testified that he received two liquids, a powder substance, and a hand-rolled cigarette butt for testing. He stated that one of the liquids tested positive for methamphetamine and that the other tested positive for pseudoephedrine. The powder also tested positive for pseudoephedrine. He tested the cigarette and discovered that it contained marijuana.

Frances Louise Morrison testified for the appellant that she was his mother and that she had never owned a blue Oldsmobile. She stated that she did not know why her license plate was on the car.

*Dane Lee Duckett*, 2005 WL 2777378, at *1-3. This Court affirmed Petitioner's convictions and sentence. *Id.* at *7. Subsequently, Petitioner filed a pro se petition for post-conviction relief in which he alleged that he received ineffective assistance of counsel at trial because trial counsel did not adequately convey the State's plea offer to Petitioner, failed to object to the characterization of the evidence by counsel for the State and failed to object to a reference to Petitioner's prior bad acts during closing argument of the State. The post-conviction court reviewed the petition and determined that Petitioner presented a "colorable claim" for relief. The post-conviction court appointed counsel, and an amended petition for relief was filed in which Petitioner argued that trial counsel failed to "convey sentence limits to Petitioner" in addition to the grounds raised in the original petition.

*Evidence at the Post-Conviction Hearing*

The trial court held a hearing on the post-conviction petition. At the hearing, Petitioner testified that he met trial counsel in the jail for the first time. This meeting lasted about "[t]hirty, forty[-] five minutes or longer." At that time, trial counsel discussed the charges that Petitioner was facing but did not discuss the potential sentences Petitioner could receive if convicted. The next meeting between Petitioner and trial counsel was held at trial counsel's office.

Petitioner claimed that trial counsel did not know anything about discovery motions that had been filed. Petitioner admitted that trial counsel filed a pretrial motion to suppress the evidence seized but claimed that he did not receive a copy of the motion. Petitioner did remember speaking with trial counsel on the telephone regarding the hearing. The motion to suppress was denied.

Petitioner testified that he received several plea offers from the State prior to trial. The first offer was for 219 days, and trial counsel advised him about this offer. Petitioner did not accept the guilty plea offer because he claimed that he was not guilty. Trial counsel discussed the offer with Petitioner for a second time, but Petitioner refused to take the offer because he insisted that he was not guilty. Petitioner told trial counsel that he wanted to "beat" the charges against him. According to Petitioner, trial counsel advised him that they had a "good chance" of success at trial. Petitioner claimed that it was partially due to trial counsel's advice that he chose not to accept the plea offer. Further, Petitioner stated that trial counsel never informed him about the "extent" of his "exposure" for sentencing purposes.

Petitioner recalled that he waived the right to testify at trial so that his prior criminal history could not be used against him. Petitioner thought that this was a good decision. Petitioner claimed that he had no idea how many years of incarceration he was facing as a result of the charges against him and possible convictions.

Petitioner attempted to contact trial counsel several times between the trial and the sentencing hearing and claimed that trial counsel's office refused to accept calls from the jail. Petitioner claimed that the State offered him a five-year sentence prior to sentencing. Petitioner stated that he turned down this offer because he thought it was the maximum sentence he could receive.

Petitioner admitted that trial counsel made himself available to Petitioner and that he had no issues with communicating with trial counsel. Petitioner also admitted that he did not show up for a meeting that was scheduled with trial counsel for the day prior to trial.

Trial counsel testified that he had several meetings with Petitioner prior to trial but that Petitioner failed to show up for a scheduled meeting on the day before trial was supposed to start. Trial counsel planned on talking about final trial strategy and discussing a plea offer from the State. Trial counsel also remembered that Petitioner was late for trial.

Trial counsel did not recall what documents he provided to Petitioner prior to trial. He remembered filing a motion for discovery and a motion to suppress and stated that the State communicated several plea offers to him prior to trial. Trial counsel could not specifically recall what discussions he had with Petitioner prior to trial about the amount of prison time he was facing as a result of the indictments. However, trial counsel testified that it was his "habit" and "practice" to discuss such matters with his clients prior to trial. Trial counsel did recall that he was concerned about whether Petitioner would be classified as a Range I or Range II offender because of the number of his prior convictions.

At the conclusion of the hearing, the post-conviction court denied the petition for post-conviction relief. The trial court later issued a written final order denying the petition in which the post-conviction court determined:

> The Court finds that all competent evidence presented by the petitioner related only to his first allegation: the failure to properly convey sentence limits to the petitioner. Regarding this issue, the Court finds:
>
>> 1. Prior to trial an offer of settlement was conveyed to, and understood by the petitioner. The petitioner rejected this offer.
>>
>> 2. It is the practice of [trial counsel] to discuss sentencing issues with his clients, and the matter of enhanced punishment was of concern to [trial counsel] and was considered by the petitioner.
>>
>> 3. The petitioner did not attend an important pre-trial conference with [trial counsel] to further discuss the State's offer and trial strategy.
>>
>> 4. The petitioner has presented no evidence of ineffective assistance of counsel regarding this allegation.
>
> The Court further finds because there was no evidence presented regarding the petitioner's second and third allegations: failure of defense counsel to object to mischaracterization of evidence, and failure of defense counsel to object to State's reference in closing argument to defendant's prior bad acts, that these allegations are without merit.
>
> This Court finds that the petitioner was not prejudiced nor adversely affected by trial [counsel] and that this claim of ineffective assistance of counsel was not proven during this hearing.

None of the proof offered by the petitioner supports this claim that trial [counsel] was ineffective in his representation.

The petitioner has not carried this burden.

There is no basis to grant the relief sought by the petitioner . . . .

Petitioner filed a timely notice of appeal, seeking our review of the post-conviction court's dismissal of his petition for post-conviction relief.

*Analysis*
*Post-Conviction Standard of Review*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issues raised, we will afford those findings of fact the weight of a jury verdict, and this Court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not reweigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Shields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

*Ineffective Assistance of Counsel*

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). "Because a petitioner must establish both prongs of the test to prevail on a claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997).

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates

against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

### A. Advice Regarding Sentence

First, Petitioner contends that trial counsel was ineffective for failing to properly advise Petitioner of the potential sentence he could receive if he went to trial. Specifically, Petitioner argues that trial counsel's failure to properly advise him resulted in a "six-year sentence when it could have been 219 days or no more than five years."

In its order denying the petition for post-conviction relief, the post-conviction court noted that trial counsel's habit was to discuss potential sentences with clients prior to trial. The post-conviction court also noted that Petitioner admitted at the hearing that he did not on the eve of the trial attend a scheduled pre-trial meeting with trial counsel. The evidence does not preponderate against the judgment of the post-conviction court. Petitioner has failed to carry his burden in this regard.

### B. Failure to Object to Closing Argument

Next, Petitioner claims ineffective assistance of counsel occurred when trial counsel failed to object to an inappropriate statement made by the State during closing argument. Specifically, Petitioner complains that trial counsel did not object when the State made the following comment during closing argument, "He's done it before, he's going to do it again." The State counters that Petitioner waived the argument for failure to include a copy of the trial transcript.

Initially, we note that Petitioner has failed to include the direct appeal record with the post-conviction record on appeal. However, Petitioner asked this court to take judicial notice of the direct appeal record. This court may take judicial notice of the direct appeal record. *See State ex rel. Wilkerson v. Bomar*, 376 S.W.2d 451, 453 (Tenn. 1964). We have reviewed the trial transcript.

However, Petitioner has the burden of establishing his post-conviction allegations by clear and convincing evidence. T.C.A. § 40-30-110(f). Petitioner herein offered no evidence at the post-conviction hearing that trial counsel's failure to object to the State's comment was anything

other than a tactical decision not to call attention to the comment. Even if the failure to object to the prosecutor's statement was an oversight, there is nothing in the record to suggest that the failure to object prejudiced him, especially in view of the substantial evidence against him.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

 

 

_____

JERRY L. SMITH, JUDGE